UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLDWELL SOLAR, INC., a California Corporation, | No. 2:20-cv-00768-TLN-CKD |
| Plaintiff, | |
| v. | **ORDER** |
| ACIP ENERGY LLC, a California Limited Liability Company, | |
| Defendant. | |

This matter is before the Court pursuant to Defendant ACIP Energy LLC's ("Defendant") Motion to Dismiss or Stay.  (ECF No. 8.)  Plaintiff Coldwell Solar, Inc. ("Plaintiff") filed an opposition.  (ECF No. 9.)  Defendant filed a reply.  (ECF No. 10.)  Having carefully considered the briefing filed by both parties, the Court hereby DENIES Defendant's motion.

///

///

///

///

///

///

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a solar company that alleges misappropriation of trade secrets and related state law claims.  Plaintiff employed David Vincent ("Vincent") from August 2016 until April 2019 when Plaintiff terminated Vincent's employment.  (ECF No. 1 at ¶¶ 15, 30.)  Approximately two weeks after his termination, Vincent founded an energy consulting firm, ACIP Energy LLC.  (*Id.* at ¶¶ 32–33.)  Plaintiff alleges that shortly after Vincent was terminated for cause, Defendant has accessed and used Plaintiff's confidential and proprietary information without authorization "to provide energy consulting services" and to "approach [Plaintiff's] existing and potential clients, intending to dissuade them from further engaging with [Plaintiff], to otherwise disrupt the economic relationship, and convert them to [Defendant's] clients[] or CalCom's clients."[1]  (*Id.* at ¶¶ 34, 39, 40.)  This involves disclosing, using, and misappropriating Plaintiff's trade secrets, "including proprietary solar pricing models, client lists[,] and client information for the benefit of [Defendant]."  (*Id.* at ¶ 37.)  Specifically, Plaintiff alleges Defendant — through Vincent as an agent — "used confidential information and trade secrets to unlawfully solicit" Plaintiff's client, Creekside Farming Company, Inc. ("Creekside"), on behalf of CalCom.  (*Id.* at ¶ 42.)

Plaintiff alleges this solicitation is evidenced by a phone call that took place between one of its employees and Creekside "on or about August 20, 2019," in which the employee learned Creekside was "very close" to signing a deal with Defendant because Vincent had approached Creekside about their solar projects, sought to dissuade Creekside from working with Plaintiff, and solicited Creekside to work with Defendant and CalCom.  (*Id.* at ¶ 44.)  Prior to this phone call, Plaintiff had prospective business plans with Creekside to perform solar construction on two sites — Madera and Chowchilla.  (*Id.* at ¶ 43.)  At some point, Defendant even signed Engineering Procurement Construction agreements ("EPCs") with Creekside for the projects at Madera and Chowchilla.  (*Id.*)  Vincent purportedly worked on both projects while employed by Defendant.  (*Id.*)  To retain Creekside as a customer, Plaintiff alleges it was forced to create a new proposal and "lower [its] previous proposal price by $100,000."  (*Id.* at ¶ 46.)  As a result,

---

[1]     Plaintiff identifies CalCom Energy ("CalCom") as one of its direct competitors.  (*Id.* at ¶ 39.)

1    Plaintiff asserts it "suffered lost profits, missed opportunities with potential and/or existing

2    clients, and wasted precious time, finances, and other resources attempting to remedy ACIP and

3    Vincent's flagrant conduct." (*Id.* at ¶ 49.)

4         On April 14, 2020, Plaintiff filed the instant action against Defendant, asserting the

5    following claims: (1) misappropriation of trade secrets under 18 U.S.C. § 1836; (2)

6    misappropriation of trade secrets under California Civil Code § 3426; (3) intentional interference

7    with prospective economic advantage; and (4) intentional interference with contractual relations.

8    (ECF No. 1.)   On May 27, 2020, Defendant moved to dismiss or stay this federal action pending

9    resolution of a concurrently filed action in Placer County Superior Court.[2]  (ECF No. 8 at 2.)  On

10   July 9, 2020, Plaintiff filed an opposition (ECF No. 9), and on July 15, 2020, Defendant filed a

11   reply (ECF No. 10).

12        **II.    STANDARD OF LAW**

13        A motion to dismiss for failure to state a claim upon which relief can be granted under

14   Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

15   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

16   "a short and plain statement of the claim showing that the pleader is entitled to relief." *See*

17   *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the

18   complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon

19   which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

20   "This simplified notice pleading standard relies on liberal discovery rules and summary judgment

21   motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*

22   *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

23

24   [2]     On October 18, 2019, Vincent filed a complaint alleging employment-related claims
     against Plaintiff in Placer County Superior Court — *David Vincent v. Coldwell Solar, Inc., et al.*,
25   Case No. SCV0043900.  (ECF No. 8-2.)  Plaintiff filed a cross-complaint against Vincent
     asserting the following claims: (1) breach of duty of loyalty; (2) breach of contract; (3) intentional
26   misrepresentation; (4) misappropriation of trade secrets under 18 U.S.C. § 1836; (5)
     misappropriation of trade secrets under Cal. Civ. Code § 3426; (6) intentional interference with
27   contractual obligations; (7) intentional interference with prospective economic advantage; and (8)
     unfair competition.  (ECF No. 8-3.)
28

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

4

1    *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

2         If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

3    amend even if no request to amend the pleading was made, unless it determines that the pleading

4    could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

5    1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

6         **III.    ANALYSIS**

7         Defendant argues the Court should abstain from exercising jurisdiction over the present

8    matter pursuant to the *Colorado River* doctrine in favor of concurrent and parallel state

9    proceedings.  (ECF No. 8 at 5.)  In the alternative, Defendant argues Plaintiff fails to sufficiently

10   plead its four causes of action.  (*Id.* at 6–10.)  The Court will first evaluate Defendant's Notice of

11   Related Cases (ECF No. 8-5) and Request for Judicial Notice (ECF No. 8-6), then address the

12   argument regarding the *Colorado River* doctrine, and finally, assess the sufficiency of the

13   Complaint.

14              A.    Defendant's Notice of Related Cases

15        Defendant has filed a Notice of Related Cases attempting to relate Placer County Superior

16   Court Case No. SCV0043900, *David Vincent v. Coldwell Solar, Inc., et al.*, to the instant matter.

17   (ECF No. 8-5.)  Under Local Rule 123, a Notice of Related Cases is a case management tool by

18   which "the Chief Judge or a Judge designated by the Chief Judge may, by special order, reassign

19   either action to any Judge or Magistrate Judge sitting in the Eastern District of California as the

20   situation may dictate."  *See* E.D. Cal. L.R. 123(c).  Pursuant to Local Rule 123, cases may only be

21   related if they are both filed within the Eastern District.  *Id.*  As the case Defendant is attempting

22   to relate has been filed in Placer County Superior Court, Defendant's Notice of Related Cases is

23   DENIED.  (ECF No. 8-5.)

24              B.    Defendant's Request for Judicial Notice

25        Defendant asks the Court to take judicial notice of Exhibits A and B — the Complaint

26   filed by Vincent in *David Vincent v. Coldwell Solar, Inc., et al.*, Placer County Superior Court

27   Case No. SCV0043900 (ECF No. 8-2) and the Cross-Complaint filed by Plaintiff against Vincent

28   in the same action (ECF No. 8-3).  (ECF No. 8-6 at 2.)  This request is not opposed.

The Court may take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The record of a state court proceeding is one such source. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012); *see also Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). The Court cannot accept the representations made in the state court documents as true, but it may take judicial notice of the documents themselves and the fact that those representations were made. *NuCal Foods, Inc.*, 887 F. Supp. 2d at 984–85. Subject to that caveat, Defendant's request for judicial notice of Exhibits A and B is GRANTED.

### C.   *Colorado River* Doctrine

Under the *Colorado River* doctrine, a federal court may stay or dismiss a suit in "exceedingly rare" circumstances when there is a concurrent state proceeding and "considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" show that the federal case should defer to the state case. *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)). This doctrine is a "narrow exception" to the federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 813, 817. As such, "pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction." *Id.* (internal quotations and citation omitted). "[A] stay can be justified 'only in the exceptional circumstances.'" *Vignola v. FAT Brands, Inc.*, No. CV 18-7469 PSG (PLAx), 2019 WL 6138473, at *3 (C.D. Cal. June 17, 2019) (quoting *Colo. River*, 424 U.S. at 813).

"In deciding whether to dismiss or stay a federal case in favor of a state case concerning the same subject matter, courts in the Ninth Circuit are to examine eight factors: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all

1   issues before the federal court." *Samsung Elecs. Am., Inc. v. Ramirez* (*Samsung*), No. 1:17-cv-

2   01462-AWI-SAB, 2018 WL 2198721, at *2–3 (E.D. Cal. May 14, 2018), *aff'd*, 777 F. App'x 243

3   (9th Cir. 2019).  These eight factors "are to be applied in a pragmatic and flexible way, as part of

4   a balancing process rather than as a mechanical checklist." *Am. Int'l Underwriters (Philippines),*

5   *Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (internal quotations and citation

6   omitted).  Still, "[t]he underlying principle guiding this review is a strong presumption against

7   federal abstention," *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir.

8   2017), and "[a]ny doubt as to whether a factor exists should be resolved against a stay, not in

9   favor one," *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).  Since there

10  is no property at stake over which any court assumed jurisdiction, the first *Colorado River* factor

11  is irrelevant.  *See Samsung*, 2018 WL 2198721, at *3 ("As to the first consideration, since no

12  piece of physical property is involved in this action it is irrelevant.").  Thus, the Court will assess

13  only the remaining seven factors.

> i.      *Whether the State Court Proceedings Will Resolve All Issues Before*
> *the Federal Court — i.e. "Parallelism"*

16          Because Defendant is not a party in the state court proceedings and consequently will not

17  be bound by state court judgments, Plaintiff asserts it will need to pursue further litigation to seek

18  an injunction against Defendant to prevent Defendant from further misappropriating Plaintiff's

19  trade secrets.  (ECF No. 9 at 12.)  Hence, Plaintiff argues the state court proceedings will not

20  resolve all its issues currently before the Court.  (*Id.*)  Defendant does not address this matter in

21  its motion or reply.  (*See* ECF Nos. 8, 10.)

22          Some courts have articulated the *Colorado River* test as a two-part inquiry, with the

23  instant factor as a precondition to be met prior to balancing the remaining factors.  *See Samsung*,

24  2018 WL 2198721, at *2.  This is because "the decision to invoke *Colorado River* necessarily

25  contemplates [whether] the federal court will have nothing further to do in resolving any

26  substantive part of the case, whether it stays or dismisses." *Moses H. Cone Mem'l Hosp. v.*

27  *Mercury Constr. Corp.* (*Moses*), 460 U.S. 1, 28 (1983); *see R.R. St. & Co.*, 656 F.3d at 979 n.9;

28  *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002).  As such, the Court will address this factor

1   as a preliminary matter.

2          Parallelism between suits in state and federal court "is necessary but not sufficient to

3   counsel in favor of" a stay or dismissal pursuant to the *Colorado River* doctrine. *Seneca Ins.*, 862

4   F.3d at 845. Suits are "'parallel' when substantially the same parties are contemporaneously

5   litigating substantially the same issues in another forum." *Interstate Material Corp. v. City of*

6   *Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1989) (quoting *Calvert Fire Ins. Co. v. Am. Mutual*

7   *Reinsurance Co.,* 600 F.2d 1228, 1229 n.1 (7th Cir. 1979)). Thus, "application of the *Colorado*

8   *River* doctrine does not require an exact duplication of the parties involved or the claims

9   asserted." *Boe v. Christian World Adoption, Inc.*, No. CIV S-10-0181 KJM-CMK, 2011 WL

10  1585830, at *7 (E.D. Cal. Apr. 22, 2011) (quoting *Sabbag v. Cinnamon*, No. 5:10-cv-02735-JF

11  (HRL), 2010 WL 8470477, at *5 (N.D. Cal. Dec. 10, 2010)). However, "[t]he requirement of

12  'parallel' state court proceedings implies that those proceedings are sufficiently similar to the

13  federal proceedings to provide relief for all of the parties' claims." *Intel Corp. v. Advanced Micro*

14  *Devices Inc.*, 12 F.3d 908, 913 n.4 (9th Cir. 1993); *see also Clark v. Lacy*, 376 F.3d 682, 686 (7th

15  Cir. 2004) (holding the true question of parallelism is not whether the suits are formally

16  symmetrical but whether there is a "substantial likelihood that the state litigation will dispose of

17  all claims presented in the federal case" (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780

18  F.2d 691, 695 (7th Cir. 1985))).

19         "When a district court decides to dismiss or stay under *Colorado River*, it presumably

20  concludes that the parallel state-court litigation will be an adequate vehicle for the complete and

21  prompt resolution of the issues between the parties." *Id.* at 913 (quoting *Moses*, 460 U.S. at 28);

22  *see R.R. Street & Co. Inc.*, 656 F.3d at 982. Accordingly, "[i]f there is any substantial doubt" as

23  to whether the state proceedings will resolve the federal action, "it would be a serious abuse of

24  discretion to grant the stay or dismissal at all." *Moses*, 460 U.S. at 28.

25         Here, the Court recognizes the parties to the state and federal suits at issue are admittedly

26  somewhat different. The state court dispute was brought by Vincent against Plaintiff, while the

27  federal suit was brought by Plaintiff against Defendant. (ECF Nos. 1, 8-2, 8-3.) Nonetheless,

28  even though Vincent and Defendant are separate parties, they are related and their interests in the

1    dispute are substantially similar.  Vincent has an interest in the issue of whether Defendant owes

2    legal fees and/or is enjoined from engaging in certain business-type conduct because he is

3    Defendant's sole founder, manager, and operator.  (ECF No. 1 at 6; ECF No. 8 at 4.)  Likewise,

4    Defendant has an interest in the dispute over whether Vincent owes legal fees and/or is enjoined

5    from engaging in certain business-type conduct because Defendant is reliant on Vincent for its

6    operation.  (*See* ECF No. 8 at 3 ("[Vincent] founded a company known as ACIP Energy

7    [Defendant] (of which he is the sole owner and manager) . . . .").)  Since Vincent and Defendant

8    are undeniably related parties and their interests are so similar, the suits involve "substantially the

9    same parties."  *Boe*, 2011 WL 1585830, at *7 (holding that parties were substantially similar

10   because the parties in the federal action were either employed by or the employers of the parties

11   named in the state action; *In re CytRx Corp. Stockholder Derivative Litig.*, No. CV 14-6414-GHK

12   (PJWx), 2015 WL 12745084, at *4 (C.D. Cal. Jan. 8, 2015) ("Even though both actions involve

13   different representative plaintiffs, because they are derivative suits, they both have the same real

14   party in interest." (citing *Clark*, 376 F.3d at 686)); *Caminiti & Latarola, Ltd. v. Behnke*

15   *Warehousing, Inc.*, 962 F.2d 698, 700–01 (7th Cir. 1992) (finding that an estate and a company

16   constituted "substantially the same parties" because they had substantially similar interests since

17   the estate owned one-fourth of the company).  Moreover, the claims appear substantially similar

18   in both actions because Plaintiff's present Complaint includes identical causes of action it raises

19   in its state court cross-complaint.  (ECF No. 1; ECF No. 8-3.)

20        Despite the foregoing, the Court retains substantial doubt as to whether the state

21   proceedings will dispose of all claims present in the federal case.  As Plaintiff correctly asserts,

22   the state court's decisions will only bind Vincent individually and not Defendant.  (ECF No. 9 at

23   13–14.)  Thus, the state action may enjoin Vincent from misappropriating Plaintiff's trade secrets

24   but would not necessarily preclude Defendant from doing so, thereby establishing a need for

25   further litigation.  (*Id.*)  The fact that further litigation may be necessary to resolve Plaintiff's

26   federal action against Defendant counsels against a surrender of jurisdiction.  Accordingly, this

27   factor weighs against granting a stay or dismissal.

28   ///

*ii.     Inconvenience of the Federal Forum*

Plaintiff asserts the federal forum's location is not inconvenient for Defendant because Defendant resides in Yuba City, California which is in the Eastern District of California and in close proximity to the Robert T. Matsui United States Courthouse.  (ECF No. 9 at 14.)  Defendant does not refute this assertion, but rather argues that litigation in the federal forum would be inconvenient because "it is troubling to go through duplicative written discovery, depositions, motion practice, procedural coordination, and the risk of inconsistent determinations on the issues." (ECF No. 10 at 2.)  However, in deciding whether suit in the federal forum would be inconvenient, "the court looks at the geographical location of the federal forum, not merely that a claim is being litigated in federal court." *Samsung*, 2018 WL 2198721, at *3.  Here, Defendant merely contends that litigation generally will be burdensome in an additional court and fails to address inconvenience on a geographical level.  Accordingly, the Court finds this factor weighs against granting a stay or dismissal.

*iii.     Desire to Avoid Piecemeal Litigation*

Defendant argues that "[p]roceeding with two separate and parallel actions on the same set of facts with the same claims will create piecemeal litigation."  (ECF No. 8 at 6.)  In opposition, Plaintiff asserts piecemeal litigation will not occur because there is no "congruence" between the state court action and the instant federal action.  (ECF No. 9 at 15.)  Moreover, Plaintiff maintains there is no strong federal policy that its claims should be tried in state court and thus, the piecemeal litigation factor is not met.  (*Id.* at 14–15.)

The Ninth Circuit has established that "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters*, 843 F.2d at 1258.  However, "[a] general preference for avoiding piecemeal litigation is insufficient to warrant abstention." *Seneca Ins.*, 862 F.3d at 842–43; *see Tabletop Media, LLC v. Citizens Sys. Am. Corp.*, No. CV 16-7140 PSG (ASx), 2017 WL 10591883, at *3 (C.D. Cal. Dec. 22, 2017) ("The concern with piecemeal litigation in the *Colorado River* context does not focus on the risk of preclusion, but instead on federal policy."). "[C]oncern for avoidance of piecemeal litigation weighs in favor of a stay only when 'there is

1   evidence of a strong federal policy that all claims should be tried in the state courts.'" *Rodas v.*

2   *Porsche Cars N. Am., Inc.*, No. CV14-3747 PSG (MRWx), 2016 WL 1257760, at *3 (C.D. Cal.

3   Mar. 30, 2016) (quoting *Morros*, 268 F.3d at 706).

4          Here, Defendant fails to identify any strong federal policy in support of his allegations and

5   provides nothing more than a general preference for avoiding piecemeal litigation due to the risk

6   of preclusion.  (*See* ECF No. 8 at 5–6.)  Consequently, even though the federal action "may result

7   in piecemeal litigation, the 'exceedingly rare' circumstances necessary to permit the Court to

8   sidestep its 'virtually unflagging obligation . . . to exercise the jurisdiction given' to it are absent."

9   *Samsung*, 2018 WL 2198721, at *6 (quoting *Colo. River*, 424 U.S. at 817; *Smith v. Cent. Ariz.*

10  *Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005)).  Accordingly, the Court finds

11  this factor weighs against granting a stay or dismissal.

12                      *iv.*      *The Order in Which the Forums Obtained Jurisdiction*

13         Inquiry into which forum obtained jurisdiction first is not measured solely by which

14  complaint was filed first, but rather on how much progress has been made in the two actions.

15  *Moses*, 460 U.S. at 21.  If the state court has already made significant progress in the related

16  action, this factor may weigh in favor of a stay or dismissal.  *See R.R. St. & Co.*, 656 F.3d at 980

17  (finding this factor weighed in favor of granting stay or dismissal because the state court already

18  made significant progress in the related action).

19         Defendant seemingly asserts that, because state court obtained jurisdiction prior to this

20  Court, the factor weighs in favor of granting a stay or dismissal.  (*See* ECF No. 8 at 5 ("Vincent

21  initially filed with the state court . . . .").)  However, in opposition, Plaintiff argues that although

22  the state court action was filed first, the state court action is in its infancy.  (ECF No. 9 at 16.)

23  Plaintiff purportedly filed its answer to Vincent's state court complaint less than a month prior to

24  Plaintiff filing its federal court opposition to the instant motion.  (*Id.*)  Moreover, Plaintiff

25  contends that litigation in state court had just recently started and there are "no dispositive

26  motions on the horizon, much less pending."  (*Id.*)  Defendant fails to rebut this argument in its

27  reply.  (*See* ECF No. 10.)  Accordingly, the Court finds this factor is neutral because neither the

28  present federal action nor state action has progressed significantly further than the other.

> v.    *Whether Federal Law or State Law Provides the Rule of Decision*
>        *on the Merits*

In its opposition, Plaintiff argues the presence of federal law questions under 18 U.S.C. § 1836(c) weighs in favor of declining to grant a stay or dismissal.  (ECF No. 9 at 11.)  Defendant does not address this factor in either its motion or reply.  (*See* ECF Nos. 8, 10.)

The "presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction.  *Moses*, 460 U.S. at 26.  "'[T]he presence of state-law issues may weigh in favor of that surrender' only 'in some rare circumstances'" where "the state law questions are themselves complex and difficult issues better resolved by a state court.'"  *Samsung*, 2018 WL 2198721, at *5 (quoting *Moses*, 460 U.S. at 26).  "Cases implicating only 'routine issues of state law — misrepresentation, breach of fiduciary duty, and breach of contract — which the district court is fully capable of deciding' do not entail 'rare circumstances' counseling in favor of abstention."  *Id.* (quoting *Travelers Indem. Co.*, 914 F.2d at 1370).  Thus, the presence of Plaintiff's federal law issue — namely, the misappropriation of trade secrets claim under 18 U.S.C. § 1836 — weighs against the Court's surrender of jurisdiction.  Furthermore, the state law issues in this action — trade secret misappropriation, intentional interference with prospective economic advantage, and intentional interference with contractual relations — are not complex and do not rise to the level of a "rare circumstance" weighing in favor of stay or dismissal.  (*See* ECF No. 1); *see also Seneca Ins.*, 862 F.3d at 844 (finding that where "claims ultimately boil down to arguments about misrepresentation, fraudulent inducement, detrimental reliance, breach of contract, and rescission," those claims do not constitute the type of "rare circumstances" required under *Colorado River* to favor a stay or dismissal).  Accordingly, the Court finds this factor weighs against granting a stay or dismissal.

> vi.    *Whether State Court Proceedings Can Adequately Protect the*
>        *Rights of the Federal Litigants*

Plaintiff asserts the state court proceedings will not adequately protect its federal rights because Defendant will not be bound by any of the state court's judgments.  (ECF No. 9 at 12.)  The Court observes no clear counterargument by Defendant in either its motion or reply, except

1    perhaps that "[Plaintiff] loses no claim or right to recovery by proceeding in its initially chosen

2    forum, the state court."  (ECF No. 8 at 6.)

3         "The adequacy factor focuses on whether there is 'an impediment to the state court

4    protecting the litigants' federal rights.'" *Vignola*, 2019 WL 6138472, at *5 (quoting *Seneca Ins.*,

5    862 F.3d at 844).  Inadequacy of the state forum may preclude granting stay or dismissal.  *Seneca*

6    *Ins.*, 862 F.3d at 845.  However, the Ninth Circuit has held that the alternative — *i.e.*, the

7    adequacy of the state forum — "never compel[s] abstention."  *Id.*  Therefore, the fact that state

8    courts can adequately protect a party's rights under federal law "at best renders this factor

9    neutral."  *Vignola*, 2019 WL 6138473, at *5.

10                    *vii.*    *Desire to Avoid Forum Shopping*

11        Defendant appears to suggest that Plaintiff, in bringing its present claim in federal court, is

12   forum shopping because it *could* have consolidated this action with the state court action but

13   chose otherwise.  (*See* ECF No. 10 at 2–3.)  In opposition, Plaintiff asserts it is not forum

14   shopping, but rather acting within its rights in filing a suit in the forum of its choice given that the

15   Defend Trade Secrets Act "provides the Court with original jurisdiction over [Plaintiff's] trade

16   secret claims."  (ECF No. 9 at 16.)

17        In general, "forum shopping weighs in favor of a stay [or dismissal] when the party

18   opposing the stay [or dismissal] seeks to avoid adverse rulings made by the state court or to gain a

19   tactical advantage from the application of federal court rules."  *Travelers Indem. Co.*, 914 F.2d at

20   1371.  However, "it typically does not constitute forum shopping where a party 'acted within [its]

21   rights in filing a suit in the forum of [its] choice' . . . even where '[t]he chronology of events

22   suggests that both parties took a somewhat opportunistic approach to th[e] litigation.'"  *Seneca*,

23   862 F.3d at 846 (citations omitted).  Courts also consider subfactors such as any state court

24   setbacks to the party pursing federal jurisdiction and lapse in time since the initial filing in state

25   court.  *See Montanore Mins. Corp. v. Bakie*, 867 F.3d 1160, 1169 (9th Cir. 2017) ("If [the party]

26   pursued suit in a new forum after facing setbacks in the original proceeding, this factor may

27   weigh in favor of a stay." (citation and internal quotation omitted)); *U.S. v. State Water Res.*

28   *Control Bd.*, 988 F.3d 1194, 1206 (9th Cir. 2021) ("The court also considers a lapse in time in

13

1   determining whether a party has engaged in forum shopping.  For example, when a party waits

2   three-and-a-half years . . . or two-and-a-half years . . . after initially filing in state court, that can

3   weigh in favor of a stay." (internal citations omitted)).

4         Here, the state action at issue was initiated in October of 2019 (ECF No. 8-2) and the

5   federal action was filed approximately one-and-a-half years later in April of 2021 (ECF No. 1).

6   Although lengthy, this lapse in time is still a year less than that considered by the Ninth Circuit in

7   *American International Underwriters*.  843 F.2d at 1259 (finding that a two-and-a-half-year lapse

8   in time weighed in favor of a stay).  The Court further emphasizes that it was Vincent and not

9   Plaintiff who initiated the state action.  (ECF No. 8-2.)  Regarding setbacks, Plaintiff maintains

10  there were "no dispositive motions on the horizon, much less pending" in the state proceeding at

11  the time it filed this federal action.  (ECF No. 9 at 16.)  Defendant proffers no arguments to the

12  contrary.  (*See* ECF Nos. 8, 10.)  The totality of these considerations demonstrates this factor is,

13  at best, neutral.

14        On balance, the Court finds it is not appropriate to grant stay or dismissal of this federal

15  action.  The Court has substantial doubt that state court proceedings will dispose of all Plaintiff's

16  claims in this federal action and that there will be no need for future litigation on the present

17  matter.  This doubt necessarily precludes the Court from granting Defendant's motion under the

18  *Colorado River* doctrine.  *R.R. St. & Co.*, 656 F.3d at 982.  Consideration of the remaining

19  *Colorado River* factors further corroborates this conclusion as all factors were either neutral or

20  weighed against granting stay and dismissal — no factors supported granting stay or dismissal.

21  As a result, this federal action does not rise to the level of an "exceedingly rare" or "exceptional"

22  circumstance required for the Court to abstain from its "virtually unflagging obligation to exercise

23  the jurisdiction given to them" under this "narrow exception."  *Colo. River*, 424 U.S. at 817–18.

24  The Court hereby DENIES Defendant's motion to stay or dismiss under the *Colorado River*

25  doctrine.

26              D.      Sufficiency of the Complaint

27        Defendant next moves to dismiss Plaintiff's Complaint in its entirety pursuant to Rule

28  12(b)(6) for failure to state a claim upon which relief can be granted.  (ECF No. 8 at 3–4, 10.)

1   The Court will first evaluate the sufficiency of Plaintiff's two trade secret misappropriation

2   claims, then its intentional interference with prospective economic advantage claim, and lastly, its

3   claim for intentional interference with contractual relations.

4        *i.*   *Misappropriation of Trade Secrets (Claims One and Two)*

5      Defendant argues Plaintiff insufficiently pleaded its misappropriation of trade secrets

6   claims under the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act

7   ("CUTSA").  (ECF No. 8 at 6–8.)  In opposition, Plaintiff contends its claims are adequately

8   pleaded and that trade secret misappropriation claims are not subject to a heightened pleading

9   standard (as it believes Defendant suggests in its motion).[3]  (ECF No. 9 at 18–23.)  The Court

10  finds Plaintiff has the better argument.

11     California has adopted the Uniform Trade Secrets Act.  *MAI Sys. Corp. v. Peak Computer,*

12  *Inc.*, 991 F.2d 511, 520 (9th Cir. 1993), *cert. denied*, 510 U.S. 1033 (1993).  CUTSA is codified

13  at California Civil Code §§ 3426–3426.11 and "creates a statutory cause of action for the

14  misappropriation of a trade secret."  *Brescia v. Angelin*, 172 Cal. App. 4th 133, 143 (2009).

15  Similarly, at the federal level, Congress enacted the DTSA which "permits the 'owner of a trade

16  secret that is misappropriated' to bring a civil action, [pursuant to] 18 U.S.C. § 1836(b)."

17  *ExamWorks v. Todd Baldini*, No. 2:20-CV-00920-KJM-DB, 2020 WL 3127928, at *5 (E.D. Cal.

18  June 11, 2020), *vacated in part sub nom. ExamWorks, LLC v. Baldini*, 835 F. App'x 251 (9th Cir.

19  2020).  The standards for establishing misappropriation of trade secrets under federal and

20  California law are similar.  Under both the DTSA and CUTSA, a prima facie claim for trade

21  secret misappropriation requires the plaintiff to allege: "(1) the plaintiff owned a trade secret; (2)

22  the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the

23  plaintiff.'"  *Mastronardi Int'l Ltd. v. SunSelect Produce (California), Inc.*, No. 1:18-cv-00737-

24  AWI-JLT, 2019 WL 3996608, at *9 (E.D. Cal. Aug. 23, 2019) (quoting *Alta Devices, Inc. v. LG*

---

[3]     The Court notes here Defendant does not actually contend the trade secrets claims must
satisfy a heightened pleading standard, as it explicitly states the claims "must satisfy the Fed. R.
Civ. P. 8 standard[] and provide 'reasonable' detail, which is enough to permit the defendant to
prepare a defense and for the court to craft limits on discovery."  (ECF No. 8 at 6; *see also* ECF
No. 10 at 3–4.)

1  *Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).  Furthermore, both "include[]

2  substantially similar definitions of 'trade secret' and 'misappropriation.'"  *ExamWorks*, 2020 WL

3  3127928, at *5.  Given the substantial similarity between the statutory elements and definitions of

4  the DTSA and CUTSA, the Court will analyze both of Plaintiff's trade secret misappropriation

5  claims together below.  *Id.*

6                                    a.        Trade Secret

7         Defendant argues generally that Plaintiff insufficiently pleads its DTSA and CUTSA

8  claims because it fails to give fair notice of the alleged trade secrets involved and fails to

9  sufficiently allege it took reasonable efforts to maintain the secrecy of any such trade secrets.

10  (ECF No. 8 at 6.)  In opposition, Plaintiff contends it owns and has identified with reasonable

11  particularity the trade secrets that Defendant has misappropriated, and it has adequately alleged

12  reasonable steps taken to protect its confidential and proprietary information.  (ECF No. 9 at 19–

13  23.)

14         The DTSA and CUTSA "both define 'trade secret' as information, such as a formula,

15  pattern, compilation, program, device, method, technique, or process, that: (1) derives

16  independent economic value, actual or potential, from not being generally known to the public or

17  to other persons who can obtain economic value from its disclosure or use; and (2) is the subject

18  of efforts that are reasonable under the circumstances to maintain its secrecy."  *Bemis Co., Inc.*,

19  2019 WL 1004853, at *3 (citing 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d)).  "[W]here

20  [an] employer has expended time and effort identifying customers with particular needs or

21  characteristics," such information is a trade secret.  *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514,

22  1521 (1997).  Thus, "[i]t is well-established that a customer list may constitute a protectable trade

23  secret."  *Wyndham Resort Dev. Corp. v. Bingham*, No. 2:10-cv-01556-GEB-KJM, 2010 WL

24  2720920, at *5 (E.D. Cal. July 8, 2010) (quoting *Gable–Leigh, Inc. v. N. Am. Miss*, No. CV 01-

25  01019 MMM (SHx), 2001 WL 521695, at *15 (C.D. Cal. Apr. 13, 2001)).

26         Considering the relevant case law, the Court finds Defendant's arguments unpersuasive

27  for four reasons.  First, in its Complaint, Plaintiff explicitly names the trade secrets at issue as

28  "proprietary client lists, client contact information, names; proprietary industry knowledge;

                                                          16

proprietary marketing and sales strategies; proprietary leads on solar projects, and proprietary design best practices."  (ECF No. 1 at 11.)  In fact, Plaintiff provides a further description of its client lists and even identifies one of its specific clients — Creekside — whose confidential trade secret information was purportedly misappropriated.  (*Id.* at 2, 8–10.)

Second, Plaintiff's allegations establish that the identity and contact information of its clients are not publicly available (*Id.* at 2 ("[Plaintiff] goes to great lengths to protect and preserve its confidential and proprietary information, including password protecting its client lists.")), and Defendant makes no factual assertions to the contrary (*See* ECF Nos. 8, 10).  *See United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011) ("Because [d]efendant does not contend that the secret information in this case was readily ascertainable, [the court] need not weigh in on this issue.").

Third, Plaintiff has adequately pleaded its trade secrets have significant economic value because "a significant portion of [Plaintiff's] business is derived from the use of its proprietary information, which sets it apart from competitors in a crowded industry space."  (ECF No. 1 at 3, 9 ("[Plaintiff] has suffered lost profits, missed opportunities with potential and/or existing clients . . . .").)  Plaintiff further alleges it suffered damages because it had to renegotiate the price of its agreement with Creekside for $100,000 less than its initial proposal.  (*Id.* at 8–9); *see Wyndham*, 2010 WL 2740158, at *5 ("[A] customer list can be found to have economic value because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested.").

Lastly, and perhaps most obvious to the Court, Plaintiff has properly pleaded that it took reasonable measures to maintain the secrecy of its client list by requiring employees, including Vincent, to sign non-disclosure agreements ("NDAs") in which employees acknowledge the client lists and customer contact information are confidential and proprietary.  (*Id.* at 4–5); *Wyndham*, 2010 WL 2740158, at *5 ("Plaintiffs have shown that they took measures reasonable under the circumstances to maintain the secrecy of their customer lists by requiring that sales staff undergo training as well as sign multiple agreements in which they acknowledge that [plaintiff's] client lists and customer contact information are considered confidential and proprietary and the

1  property of [plaintiff].").

2        The Court finds Defendant has proffered no convincing rationale or legal basis to support

3  its conclusory argument that Plaintiff should be required at the pleading stage to provide some

4  further trade secret description and/or cite to a specific document taken by Vincent.  In sum,

5  Plaintiff has sufficiently pleaded its trade secrets under the DTSA and CUTSA.

6                          b.      <u>Misappropriation</u>

7        Next, Defendant argues Plaintiff's Complaint fails to specify how Defendant

8  "misappropriated" the alleged trade secrets because it does not explain how the trade secrets were

9  "improperly" taken or how they were "improperly" used.  (ECF No. 8 at 6–8.)  In opposition,

10  Plaintiff maintains it identifies the specific customers that Defendant, using Plaintiff's proprietary

11  information, has unlawfully solicited.  (ECF No. 9 at 21.) Again, the Court finds Plaintiff has the

12  better argument.

13        Generally, under both the DTSA and the CUTSA, "'misappropriation' means either (1)

14  the [a]cquisition of a trade secret by another person who knows or has reason to know that the

15  trade secret was acquired by improper means; or (2) the [d]isclosure or use of a trade secret of

16  another without express or implied consent." *Arthur J. Gallagher & Co. v. Tarantino*, 498 F.

17  Supp. 3d 1155, 1172 (N.D. Cal. 2020) (internal quotations and citations omitted); *Mastronardi*

18  *Int'l Ltd.*, 2019 WL 3996608, at *9.  With respect to the first option, "improper means" has been

19  defined under both the DTSA and CUTSA to include "theft, bribery, misrepresentation, breach or

20  inducement of a breach of a duty to maintain secrecy."  *See* 18 U.S.C. § 1839(6)(A); Cal. Civ.

21  Code § 3426.1(a).  With respect to the second option, "misappropriation" is further defined in

22  both 18 U.S.C. § 1839(5)(B)(ii)(III) and Cal. Civ. Code § 3426.1(b)(2)(B)(iii) to mean,

23  "disclosure or use of a trade secret of another without express or implied consent by a person

24  who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the

25  trade secret was . . . derived from or through a person who owed a duty to the person seeking

26  relief to maintain the secrecy of the trade secret or limit the use of the trade secret."

27  ///

28  ///

18

1        Here, the Court agrees that Plaintiff has alleged enough.  According to the Complaint,

2    Defendant used Plaintiff's trade secret — i.e. secret client information — without consent when,

3    at the time of the use, Defendant allegedly knew or had reason to know Vincent's knowledge of

4    the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of

5    the trade secret or limit the use of the trade secret.  (*See* ECF No. 1 at 1–12.)  It is well-

6    established that "[m]isappropriation of trade secrets can occur when an individual misuses a

7    former employer's protected secret client list, for example, by using the list to solicit clients or to

8    otherwise attain an unfair competitive advantage," and the Court finds no persuasive reason here

9    to find otherwise.  *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. 2:16-CV-08962-CAS-

10    KSx, 2018 WL 3197696, at *14 (C.D. Cal. June 25, 2018).  "[T]here is no heightened standard of

11    pleading in claims for misappropriation of trade secrets[,] . . . [a] [p]laintiff is simply required

12    generally to aver misappropriation."  *Hirel Connectors, Inc. v. United States*, No. CV 01-11069

13    DSF (VBKx), 2004 WL 5639770, at *22 (C.D. Cal. Jan 23, 2004).  Plaintiff has satisfied this

14    requirement.  Accordingly, the Court finds Plaintiff sufficiently pleaded that its trade secrets were

15    misappropriated under the DTSA and CUTSA.

16                c.    <u>Damages</u>

17        As previously mentioned, the final element of trade secret misappropriation under the

18    DTSA and CUTSA is damage to the plaintiff caused by the defendant's actions.  *Mastronardi*

19    *Int'l Ltd.*, 2019 WL 3996608, at *9.  Regarding this element, Defendant argues the Complaint

20    "offers no explanation for . . . the harm done to [Plaintiff]."  (ECF No. 8 at 7.)  However, this

21    assertion ignores the face of the Complaint in which Plaintiff unequivocally alleges it was

22    damaged in the amount of $100,000 as a result of having to renegotiate and decrease its proposal

23    price to retain Creekside as a client.  (ECF No. 1 at 8; *see also* ECF No. 9 at 23.)  As such, the

24    Court finds Plaintiff has adequately pleaded that it was damaged by Defendant's actions.

25        In sum, the Court finds Plaintiff has sufficiently pleaded the elements to state a plausible

26    claim for relief for trade secret misappropriation under the DTSA and CUTSA.  Accordingly,

27    Defendant's Motions to Dismiss Claims One and Two is DENIED.

28    ///

1

     *ii.*   *Intentional Interference with Prospective Economic Advantage*

             *(Claim Three)*

   The elements required for a plaintiff to establish intentional interference with prospective economic advantage are as follows: (1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to plaintiff; (2) defendant's knowledge of the economic relationship; (3) intentionally wrongful acts by defendant designed to disrupt the economic relationship; (4) actual disruption of the economic relationship; (5) economic harm to plaintiff proximately caused by defendant's wrongful act; and (6) defendant engaged in conduct that was independently wrongful by some legal measure other than the interference itself. *Comercializadora Recmaq Limitada v. Hollywood Auto Mall, LLC*, No. 12cv0945 AJB (MDD), 2013 WL 2248140, at *12 (S.D. Cal. May 20, 2013); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153–54 (2003).

   Yet, in apparent disregard for these elements, Defendant proffers multiple legally baseless arguments that Plaintiff insufficiently pleaded this claim.  (*See* ECF No. 8 at 9.)  Defendant argues the Complaint fails to "allege that [Plaintiff] was the only party giving quotes to Creekside" and that there were multiple instances of "interference by [Defendant] in [Plaintiff's] business contracts beyond reference to Creekside."  (*Id.*)

   The additional allegations Defendant contends are absent are not necessary at the pleading stage.  With respect to the first and second elements, Plaintiff clearly alleges it had an economic relationship with Creekside for performance of prospective solar construction services and that Defendant was presumably aware of this economic relationship given Vincent, Defendant's sole operator and manager, was assigned to work on Plaintiff's Creekside projects during his employment with Plaintiff.  (ECF No. 1 at 6–8.)  With respect to the third element, Plaintiff alleges Defendant engaged in an intentionally wrongful act by soliciting Creekside's business for the same proposed work Plaintiff was to perform for Creekside — which it further supports through factual allegations regarding an employee's phone call with Creekside on August 20, 2019.  (*Id.* at 7–9, 13 ("[A] Coldwell employee contacted [Creekside], and learned that Vincent had approached [Creekside] about their solar projects . . . seeking to dissuade [Creekside] from

20

1   working with [Plaintiff] . . . .").)  With respect to the fourth and fifth elements, Plaintiff also

2   asserts it was economically harmed in the amount of $100,000 as a result of Defendant soliciting

3   Creekside's business.  (*Id.* at 8–9.)  Accordingly, the Court finds Plaintiff has alleged facts

4   sufficient to establish the first five elements of intentional interference with prospective economic

5   advantage.

6          In its reply, Defendant submits a new argument to the Court by attacking the sixth

7   element.  Defendant asserts the Complaint provides insufficient factual allegations that Defendant

8   engaged in any "independently wrongful" intentional acts.  (ECF No. 10 at 5.)  "[A]n act is

9   independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional,

10   statutory, regulatory, common law, or other determinable legal standard."  *Korea Supply*, 29 Cal.

11   4th at 1159.  Hence, it is well-established that an adequately pleaded claim alleging

12   misappropriation of trade secrets constitutes the type of "independently wrongful" act required

13   for pleading intentional interference with prospective economic advantage.  *See, e.g.*, *Hanger*

14   *Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1137–38 (E.D.

15   Cal. 2008) ("Since facts supporting Plaintiff's misappropriation of trade secrets claim against

16   [Defendants] also support this claim, a jury could reasonably find in favor of Plaintiff on this

17   claim."); *Hirel Connectors*, 2004 WL 5639770, at *27 (holding that a claim alleging

18   misappropriation of trade secrets constituted an independently wrongful act).  Because the Court

19   finds Plaintiff has sufficiently pleaded its trade secret misappropriation claims, the Court also

20   finds Plaintiff sufficiently pleads Defendant engaged in an "independently wrongful" act.  Thus,

21   Plaintiff sufficiently pleads the sixth — and final — element of intentional interference with

22   prospective economic advantage.

23          The Court finds Plaintiff's allegations adequately raise a plausible inference that

24   Defendant acted to intentionally interfere with Plaintiff's prospective business relationship.

25   Based on the foregoing, Defendant's Motion to Dismiss Claim Three is DENIED.

26                  iii.      *Intentional Interference with Contractual Relations (Claim Four)*

27          Finally, to prevail on a claim for intentional interference with contractual relations, a

28   plaintiff must establish the following: "(1) a valid contract between plaintiff and a third party; (2)

21

1    defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a

2    breach or disruption of the contractual relationship; (4) actual breach or disruption of the

3    contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,

4    50 Cal. 3d 1118, 1126 (1990); *see Arthur J. Gallagher*, 498 F. Supp. 3d at 1176–77.

5           Defendant argues Plaintiff fails to establish the first two elements of its intentional

6    interference with contractual relations claim because Plaintiff fails to allege it had a valid contract

7    with Creekside at the time of Vincent's employment.  (*See* ECF No. 8 at 9–10.)  In opposition,

8    Plaintiff argues the Complaint alleges there was an existing contract with Creekside in the form of

9    an EPC.  (ECF No. 9 at 25–26.)  Plaintiff also argues it sufficiently pleaded that Defendant had

10   knowledge of the EPC because Vincent acquired confidential and proprietary knowledge from

11   working on Plaintiff's Creekside projects.  (*Id.* at 26.)

12          Here, the Court agrees with Plaintiff that the EPC is "self-defining" and, at the pleading

13   stage, sufficiently alleges the presence of a valid contract.  (*Id.*); *In re SCANA Corp. Sec. Litig.*,

14   No. CV 3:17-2616-MBS, 2019 WL 1427443, at *2 n.2 (D.S.C. Mar. 29, 2019) ("EPC stands for

15   Engineering, Procurement, Construction and is a prominent form of contracting agreement in the

16   construction industry . . . The engineering and construction contractor will carry out the detailed

17   engineering design of the project, procure all the equipment and materials necessary, and then

18   construct to deliver a functioning facility or asset to their clients." (internal citation omitted)).

19   Plaintiff is correct that the Complaint alleges Defendant's founder, Vincent, is a former employee

20   of Plaintiff's who "worked on the Creekside . . . projects and 'acquired confidential and

21   proprietary knowledge about the projects and [Plaintiff's] business relationship with Creekside.'"

22   (ECF No. 9 at 26 (citing ECF No. 1 ¶ 43).)  With respect to the first and second elements,

23   Plaintiff alleges it had signed EPCs with Creekside for two projects *prior* to Vincent's departure.

24   (ECF No. 1 ¶ 43.)  As such, Plaintiff adequately alleges the existence of contracts and

25   Defendant's knowledge of these contracts.  With respect to the third element, Plaintiff alleges

26   Defendant "engaged in conduct, including but not limited to using confidential information to

27   engage in communications with Creekside . . . to dissuade it from working with [Plaintiff] and

28   otherwise attempting to disrupt the relationship."  (*Id.* at ¶ 88.)  With respect to the fourth and

fifth elements, as a result of Defendant's conduct, Plaintiff "was harmed because [it] had to engage in continued negotiations with Creekside," forcing Plaintiff "to exert substantial employee hours and resources to provide Creekside . . . with an updated proposal" and "was forced to lower its previous proposal price by $100,000, thereby causing immediate economic harm." (*Id.* at ¶¶ 89–90.)

The Court finds Plaintiff's allegations adequately raise a plausible inference that Defendant acted to intentionally interfere with Plaintiff's contractual relationship with Creekside. Based on the foregoing, Defendant's Motion to Dismiss Claim Four is DENIED.

**IV.    CONCLUSION**

Based on the foregoing, Defendant's Motion to Dismiss or Stay (ECF No. 8) is DENIED. Defendant's responsive pleading is due thirty (30) days from the electronic filing date of this Order.

IT IS SO ORDERED.

Dated:  August 26, 2021

Troy L. Nunley
United States District Judge